384 So.2d 1351 (1980)
A.B.L. REALTY CORP., Benedetto Nuzzo, Leon Goldapple, and Stephen F. Kessler, Appellants,
v.
Samuel J. COHL and Rose Cohl, His Wife, Appellees.
No. 79-974.
District Court of Appeal of Florida, Fourth District.
July 2, 1980.
*1352 Stephen F. Kessler of Moore, Kessler, Roth & Beckerman, Miami, for appellants.
Michael B. Solomon of Klein, Oshinsky & Solomon, Hallandale, for appellees.
HURLEY, Judge.
By this interlocutory appeal an out-of-state corporate defendant and two non-resident individual defendants contest an order finding them subject to Florida's long-arm jurisdiction. We affirm in part and reverse in part.
The facts giving rise to this appeal are as follows. Samuel and Rose Cohl, residents of Michigan, contracted with A.B.L. Realty Corp., a New York corporation, for the purchase of a condominium residence located in Broward County, Florida. The deposit receipt contract apparently was signed by the Cohls in Michigan and by A.B.L. Realty Corp.'s president and secretary in New York. Each party retained a Florida lawyer and it seems that only the lawyers were present at the closing which was conducted in Miami Beach. As part of the closing process, A.B.L. Realty Corp., tendered a warranty deed and an affidavit of "no-lien" signed by Benedetto Nuzzo, the president of A.B.L. In part the affidavit stated:
That the ... property is free and clear of all liens, taxes, encumbrances and claims of every kind, nature and description whatsoever, ...
That this affidavit is made for the purpose of inducing Samuel J. Cohl and Rose Cohl, his wife, to purchase said property from affiant/s.
Sometime after the closing, the Cohls learned that approximately $1,741.00 was due for past maintenance, taxes and land lease rents, all of which was incurred prior to the closing date. As a result of these charges, a lien was placed against the Cohls' apartment.
The Cohls filed suit in the Seventeenth Judicial Circuit of Florida.[1] Service of *1353 process was obtained by serving the Secretary of State pursuant to Section 48.181, Florida Statutes (1979). Thereafter, A.B.L. Realty Corp., Benedetto Nuzzo and Leon Goldapple filed a special appearance for the purpose of contesting the court's jurisdiction over their persons. The trial court denied the motion as to all defendants and this appeal ensued.
Before moving to the main issue, it should be noted that plaintiffs elected to proceed under Section 48.181 as opposed to Section 48.193. Section 48.181 specifically deals with non-residents who engage in or carry on a business or business venture in the state. Section 48.193, on the other hand, in addition to listing the foregoing business activity, specifies other conduct, e.g., the commission of a tort within the state, which will also subject non-residents to the jurisdiction of Florida courts. Of particular significance in this case is the fact that the statutes provide for different methods of service of process. Section 48.181 holds that certain enumerated conduct
... constitutes an appointment by the persons and foreign corporations of the secretary of state of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.
Section 48.193(2) holds that:
Service of process upon any person who is subject to the jurisdiction of the courts of this state as provided in this section may be made by personally serving the process upon the defendant outside this state, as provided in s. 48.194. The service shall have the same effect as if it had been personally served within this state.
In turn, Section 48.194 provides:
Service of process on persons outside of this state shall be made in the same manner as service within this state by any officer authorized to serve process in the state where the person is served. No order of court is required. An affidavit of the officer shall be filed, stating the time, manner, and place of service. The court may consider the affidavit, or any other competent evidence, in determining whether service has been properly made.
It is readily apparent that Sections 48.181 and 48.193 provide different methods for acquiring personal jurisdiction over non-residents. Section 48.181 permits process to be served upon the Secretary of State, while 48.193 requires process to be served in the usual manner upon an individual, albeit out of state.
The allegations in the complaint suggest that plaintiffs might have proceeded under either statute. However, the record discloses that all three defendants were served by substituted service of process through the office of the Secretary of State. Thus, we limit our review to the perspective of Section 48.181 and look to see whether plaintiffs have shown that defendants carried on or engaged in a business or business venture within the state.
One further point of clarification: despite the clear and consistent holdings of a substantial line of cases,[2] defendants chose not to file affidavits or other verified proofs *1354 in opposition to the jurisdictional allegations in plaintiffs' complaint. We therefore accept all the plaintiffs' allegations as true and center our attention on whether these allegations contain sufficient jurisdictional facts to obtain personal jurisdiction over all or any of the defendants.
To successfully employ Section 48.181, plaintiffs must show that defendants operated, conducted, engaged in, or carried on a business or business venture in this state. As will be seen, there is a significant difference between a "business" and a "business venture". The latter may be established by showing a lesser involvement than would be required to prove the former. Lomas & Nettleton Financial Corp. v. All Coverage Underwriters, Inc., 200 So.2d 564 (Fla. 4th DCA 1967). This distinction was highlighted by the court in State ex rel. Weber v. Register, 67 So.2d 619, 620 (Fla. 1953):
There is a vast difference between the words "a business" and the words "business venture" as used in Section 47.16, [the predecessor to Section 48.181], supra. One may engage in a "business venture" without operating, conducting, engaging in or carrying on a "business."
In Weber, supra, the court found that out-of-state owners of a Florida citrus grove became subject to the jurisdiction of the Florida courts by virtue of the owners' purchase and subsequent listing of the property for sale. The court noted that,
... the allegations of the complaint filed by Mr. Driver demonstrate clearly that the purchase of the property and the subsequent listing of the same for sale amounted to engaging in a "business venture" as contemplated by our statute.
.....
The listing of the grove for sale is proof of the fact that the purchase thereof was a "business venture." Moreover, the act of listing the property for sale amounted to a transaction "connected with or incidental to" the "business venture" which the Webers initiated when they acquired the grove. Id. at 620.
Mr. Justice Drew dissented in Weber, but added this caveat:
It is my view that if the petitioners had been engaged in the business of buying and selling real estate or citrus groves, the transaction or conduct, which is the very basis of the action, would have been incidental to such business or business venture. Id. at 626.
Several cases since Weber have helped to refine the scope of its application. James v. Kush, 157 So.2d 203 (Fla. 2d DCA 1963), for example, concluded that mere ownership of Florida property was not enough to invoke the long-arm statute. Toffel v. Baugher, 125 So.2d 321 (Fla. 2d DCA 1960), cert. discharged, 133 So.2d 420 (Fla. 1961), held that the sale of Florida real estate by out-of-state owners who had inherited the property upon the death of their father, did not subject them to long-arm jurisdiction. The Toffel court distinguished its holding from Weber in this fashion:
The appellees inherited the property in Florida and did not purchase it and list it for resale, which distinguishes this case from the purview of the majority opinion of State ex rel. Weber v. Register, supra. Neither can we say that there was sufficient "minimum contacts" by the appellees within the State of Florida to bring this case under Section 47.16, Florida Statutes, F.S.A. 125 So.2d at 325.
Similarly, Hayes v. Greenwald, 149 So.2d 586 (Fla. 3d DCA 1963) disallowed the use of the long-arm statute to obtain personal jurisdiction over a couple who had sold their Florida homestead and moved to Georgia. The decision was based on a finding that
The isolated action of selling a home, by one who moves to another state, does not amount to a business venture within the meaning and intent of Section 47.16(1) Fla. Stat., F.S.A. 149 So.2d at 587.
See also, Lyster v. Round, 276 So.2d 186 (Fla. 1st DCA), cert. denied, 283 So.2d 105 (Fla. 1973).
On the other hand, Lustig v. Feinberg, 257 So.2d 299 (Fla. 1st DCA 1972), which contained allegations of a business venture to purchase and lease a Florida motel, was found to be directly controlled by the holding *1355 in Weber, supra. So, too, with O'Connell v. Loach, 203 So.2d 350 (Fla. 2d DCA 1967), where the out-of-state owners' purchase and sale of multiple residential building sites was deemed sufficient business activity to subject them to long-arm jurisdiction. The court in Wm. E. Strasser Constr. Corp. v. Linn, 97 So.2d 458 (Fla. 1957), found that an out-of-state couple, acting through an out-of-state agent, by entering into a contract to construct a three-unit motel on property which they owned in Dade County, had taken the first steps in a business venture and thus were subject to the long-arm jurisdiction of the court.
Throughout these cases there appears the recurrent theme that each case must be judged on its own facts. We cannot resort to a mechanical test, but must judge the quality and nature of the activity involved. Hyco Mfg. Co. v. Rotex Int'l Corp., 355 So.2d 471 (Fla.3d DCA 1978). The rule was best put in Horace v. American Nat'l Bank and Trust Co., 251 So.2d 33, 34 (Fla. 4th DCA 1971), referring to the holding in Strasser, supra:
... [E]ach case of this type must be resolved on the basis of the facts revealed by the record in the particular case; while general principles may be said to prevail, the application of these principles will be governed by the factual situation presented by the particular record.
The Horace court also cited Strasser, supra, for the proposition that the "minimum contacts" necessary to give rise to doing business or engaging in a business venture may consist of a single act with the intention of thereby initiating a series of acts. The court further stated that the three criteria to be used for determining the outer limits of an in personam jurisdiction based on a single act are: (1) the defendant must have purposely availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must derive from the defendant's activities in the forum state; (3) the acts or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.
Applying these principles to the case at bar, we are persuaded that plaintiffs have met their burden of showing that the defendant, A.B.L. Realty Corp., engaged in a business venture in the State of Florida. The very name of the corporate defendant implies that it is a business entity which derives profit from dealing in real estate. This single fact distinguishes the case from Toffel and Hayes, supra. A.B.L.'s acquisition and subsequent sale of the condominium unit evidence a voluntary intent to act within the State of Florida and constitute sufficient "minimum contacts" with Florida to place it squarely within the Weber, Strasser, and Lustig, supra, line of authority. The location of the property coupled with the presence of A.B.L.'s attorneyagent at the closing justify resort to Florida courts to insure the integrity of the transfer.
Turning now to the defendants Nuzzo and Goldapple, we note that plaintiffs' complaint contains no allegation that either party, individually, as opposed to acting in their corporate capacities, engaged in a business or a business venture in Florida. Rather, plaintiffs contend that Nuzzo as president of the corporation, and Goldapple,[3] as secretary of the corporation, fraudulently misrepresented certain information to induce the sale. Arguably, such an allegation might subject an individual to long-arm jurisdiction under Section 48.193, Florida *1356 Statutes (1979), (the commission of the tort of fraudulent misrepresentation within the state), but plaintiffs chose not to pursue this path. Thus, we too confine our inquiry to Section 48.181 and look for allegations that either party individually engaged in a business or business venture within the state. Finding none, we affirm the order as it pertains to the defendant, A.B.L. Realty Corp., and reverse as it pertains to the defendants Nuzzo and Goldapple.
Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent herewith.
GLICKSTEIN and HERSEY, JJ., concur.
NOTES
[1] The critical portions of the complaint are contained in paragraphs 8, 9 and 11, which are set forth below.

8. That on or about August 31, 1977, the Plaintiffs and Defendants, A.B.L. REALTY CORP., BENEDETTO NUZZO and LEON GOLDAPPLE, individually and through their agent, STEPHEN F. KESSLER, ESQUIRE, did complete the purchase of the real property, said closing being held in Miami Beach, Florida, and that the Defendants, A.B.L. REALTY CORP., BENEDETTO NUZZO and LEON GOLDAPPLE, as officers, and/or individually and/or as agent did execute a Warrant Deed, Closing Statement, Resolution for Sale of the Corporation, A.B.L. REALTY CORP., and a Non-Lien Affidavit. That these documents were executed and delivered to Plaintiffs in consideration of Plaintiff's payment of the purchase price as set forth in the Deposit Receipt. Copies of the Warranty Deed, Closing Statement, Resolution for Sale of the Corporation, A.B.L. REALTY CORP., and Non-Lien Affidavit are attached hereto and made part hereof as Plaintiff's Exhibits "2", "3", "4" and "5".
9. That subsequently to the Closing date, the Plaintiffs were notified that there were monies due for maintenance, taxes, and land lease rentals to the Quadomain Condominium Association. That the said amount is in the sum of $1,741.00 plus interest, and which said amount became due and owing before August 31, 1977, when the property was transferred from the Defendants to Plaintiffs. Attached hereto and made part hereof is a copy of the Statement showing the amount which is due and owing to the Condominium Association as Plaintiff's Exhibit "6".
11. That the Defendants, A.B.L. REALTY CORP., BENEDETTO NUZZO and LEON GOLDAPPLE did represent to the Plaintiffs that there were no liens, claims or encumbrances upon the real property and that the Defendants, A.B.L. REALTY CORP., BENEDETTO NUZZO and LEON GOLDAPPLE did execute an Affidavit for the purpose of inducing the Plaintiffs to purchase the property. The Defendants did know prior to the execution of this Affidavit that there were monies due and owing to the Condominium Association and that this Affidavit was untrue and fraudulent.
[2] Electro Engineering Products Co. v. Lewis, 352 So.2d 862 (Fla. 1977); Compania Anonima Simantob v. Bank of America, Int'l, 373 So.2d 68 (Fla. 3d DCA 1979); Pace Carpet Mills, Inc. v. Life Carpet and Tile Co., 365 So.2d 445 (Fla. 4th DCA 1978); Hyco Mfg. Co. v. Rotex Int'l Corp., 355 So.2d 471 (Fla.3d DCA 1978); Dublin Co. v. Peninsular Supply Co., 309 So.2d 207 (Fla. 4th DCA 1975); Atlas Aircraft Corp. v. Buckingham, 302 So.2d 163 (Fla. 4th DCA 1974).
[3] Plaintiffs in paragraph 11 allege that both Nuzzo and Goldapple represented that there were no liens, claims or encumbrances upon the property. The "no-lien" affidavit, however, which was attached to the complaint, was signed only by Nuzzo. Such an inconsistency calls into play the holding in Harry Pepper & Assoc., Inc. v. Lasseter, 247 So.2d 736 (Fla. 3d DCA, cert. denied, 252 So.2d 797 (Fla. 1971), that where there is an inconsistency between the general allegations of material fact in the complaint and the specific facts revealed by an exhibit, and they have the effect of neutralizing each other, the pleading is rendered objectionable. See also, Schweitzer v. Seaman, 383 So.2d 1175 (Fla. 4th DCA 1980).